NO. 07-00-0586-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



SEPTEMBER 17, 2002


______________________________



NATHANIEL VONTRE GREEN
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 208TH DISTRICT COURT OF HARRIS COUNTY;



NO. 857,561; HON. DENISE COLLINS, PRESIDING


_______________________________



Before QUINN and REAVIS, JJ., and BOYD, SJ. (1)

 Through two points, appellant Nathaniel Vontre Green challenges his conviction for
aggravated robbery. He alleges that 1) the trial court erred in denying his motion to
suppress his in-court identification as the assailant and 2) the evidence was insufficient
because the State failed to properly corroborate the testimony of an accomplice. Finding
no reversible error, we affirm the judgment of the trial court.


Background


 The victim, Henry Lewis, arrived in the United States from Austria in June 1998 and
visited a friend, Peter Olaolu, who lived in Houston. On June 19, Lewis went shopping
and spent almost $4,000. He was accompanied by Olaolu and Michelle Spencer, who was
Olaolu's friend. All three returned to Olaolu's apartment and ate dinner together. Around
11:00 p.m., Olaolu told Lewis he was taking Spencer home and going to work. Olaolu
returned around 7:30 the next morning and went to bed. Later, Spencer knocked on the
apartment door around 11:00 a.m. but left after being told by Lewis that Olaolu was
sleeping. She returned several minutes later. Lewis opened the door for her and returned
to the couch to lie down. 

 Next, a gunman later identified as appellant, and a second man entered the room. 
Appellant pointed a shotgun at Lewis's face and told Lewis to lie down and avoid looking
at him. So too did the gunman demand to know the location of Lewis's money. Apparently
because Lewis would not divulge the information, appellant struck Lewis with the shotgun. 
Lewis eventually relented and disclosed the location of his money. Thereafter, appellant,
Spencer, and the second individual took various personal items and $3000 from Lewis. 
Upon completing the robbery and as he left the abode, appellant shot Lewis. 

 Following treatment at a Houston hospital, Lewis returned to Austria. In June 1999,
the Harris County District Attorney's Office made arrangements to have a photo spread
containing appellant's picture along with five others presented to Lewis at the American
Embassy in Vienna, Austria, by a special agent. Lewis positively identified appellant from
the photo spread.

Point One - Motion to Suppress Identification 


 In his first point, appellant contends that his in-court identification by Lewis was
impermissibly tainted by the photo spread sent to and seen in Austria. According to
appellant, this is so because Lewis allegedly had been told by investigators that he would
be contacted once they had apprehended the individual who committed the offense. By
informing Lewis of this, the investigators implicitly revealed to Lewis that appellant's picture
would be in the photo spread, says appellant. This, in turn, tainted Lewis's in-court
identification of appellant as one of the culprits. We overrule the point. 

Standard of Review


 Whether the trial court erred in overruling appellant's motion to suppress depends
upon whether it abused its discretion. See Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). In other words, appellant must show that the decision fell outside the
zone of reasonable disagreement. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App.
2001). Furthermore, to suppress an in-court identification because of a supposedly tainted
photo spread, the movant must prove not only that the photographic display was
impermissibly suggestive but also that the procedure utilized created a substantial
likelihood of irreparable misidentification. Barley v. State, 906 S.W.2d 27, 33 (Tex. Crim.
App. 1995), cert. denied, 516 U.S. 1176, 116 S. Ct. 1271, 134 L. Ed.2d 217 (1996).

Application of Standard 


 State's Exhibit No. 2 shows that Lewis signed the instructions to the photographic
line-up which stated, among other things, that he was not to conclude that the photographs
contained a picture of the person who committed the crime, that he was not obligated to
identify anyone, and that it was just as important to clear innocent persons from suspicion
as to identify guilty parties. Lewis also testified that 1) he had read these instructions, 2)
Special Agent Paul Pettit told him that he was to see if he could identify anyone in the array
as the individual who shot him but, if unsure, avoid forcing himself to identify anyone, 3) 
he was positive in his identification of appellant, 4) his selection of appellant was based on
his memory and not on the photos, 5) he could identify appellant as the one who shot him
because he looked at appellant's face and gun during the incident, and 6) he remembered
appellant's face. Lewis also denied that he had been told that a photo of the suspect was
included in the spread. From this evidence, the trial court had basis to conclude that no
one informed Lewis that appellant's picture was within the photo array, assuming arguendo
that imparting such information would be improper. And, the statement which appellant
considers pivotal mandates no other finding. 

 The statement in question concerned an investigator telling Lewis that if they "got
the person or whatever, they would try to fly [him] to the United States." Prior to the
foregoing statement being made, Lewis had been asked if he could identify the individual
who shot him. Irrespective of whether it is read alone or in context, the comment said
nothing about anyone sending a photo spread to Lewis. And, to the extent that nothing
was said about a photo spread, it cannot be reasonably construed as suggesting that any
photo spread which was sent would include a picture of the individual who the police
believed committed the crime. 

 In short, we cannot reasonably conclude that the utterance about returning Lewis
to the United States if and when the police "got the person or whatever" removes the trial
court's refusal to grant the appellant's motion to suppress outside the zone of reasonable
disagreement. Thus, the trial court's decision was and is not an abuse of discretion. See
Montgomery v. State, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1990) (stating that a
decision does not constitute an abuse of discretion if it falls within the zone of reasonable
disagreement). 

Point Two - Legal and Factual Sufficiency of the Evidence

 Appellant next contends that the evidence was legally and factually insufficient to 
sustain his conviction. This is allegedly so because Lewis's testimony was inadmissible
for reasons addressed under point one and, being inadmissible, it could not be used to
corroborate the testimony of Spencer, appellant's accomplice. We overrule the point.

Standard of Review


 The standards of review applicable to determining whether the evidence is legally
and factually sufficient to support a conviction are well-settled. We do not reiterate them
but rather refer the litigants to Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
L.Ed.2d 560 (1979), King v. State, 29 S.W.3d 556, 562-63 (Tex. Crim. App. 2000), and
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) for explanations of same. 

 Next, article 38.14 of the Texas Code of Criminal Procedure provides that a
conviction cannot be based upon the testimony of an accomplice unless corroborated by
other evidence tending to connect the defendant with the offense. TEX. CODE CRIM.
PROC. ANN. art. 38.14 (Vernon 1979). Thus, before Spencer's testimony could be used
to sustain appellant's conviction, it had to be corroborated. 





Application of Standards


 As concluded under point one, Lewis's identification of appellant as the one who
shot him while assisting in the robbery was admissible. Thus, it could be used to
corroborate Spencer's testimony, assuming the latter was actually needed. And, more
importantly, it corroborated her testimony that appellant had a shotgun, entered the abode,
demanded money from Lewis, struck Lewis with the weapon, and then shot Lewis. This
is a sufficient basis upon which to conclude that the evidence supporting appellant's
conviction for aggravated robbery was legally and factually sufficient.

 Accordingly, the judgment is affirmed. Pursuant to Rule 2 of the Rules of Appellate
Procedure and in order to expedite the decision, we suspend the operation of Rule 39.9
of the Rules of Appellate Procedure to permit submission of the case prior to expiration of
the 21-day notice provided for in that rule. 

 

 Per Curiam


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T
CODE ANN. § 75.002(a)(1) (Vernon Supp. 2002). 



 often stored or transported
in vehicles.
 
Affiant believes the pictures he viewed were from the wedding reception of
Bannister and Jennifer Bannister. Affiant has learned they were married on
April 23, 2005. Affiant is familiar with the home of Bannister. The pictures
Affiant has viewed are pictures taken of the home, carport and outbuildings
of Jerry Bannister. Affiant has been to the above-described residence,
carport and outbuildings and it is the same residence, carport and
outbuildings where Jerry Bannister presently lives.
 
On this date, Affiant went by the above described residence, carport and
outbuildings and saw that the wedding decorations are still present.
 
Affiant believes based upon his training and experience and the foregoing,
that the smoking apparatus or paraphernalia will still be present at the
residence, carport, outbuilding or vehicle(s) belonging to Jerry Bannister or
his wife, Jennifer Bannister. Affiant knows such paraphernalia is against the
law and requests a search warrant to search the above described residence,
carport, and outbuildings for the same.
 
          Probable cause to support the issuance of a search warrant exists where the facts
submitted to the magistrate are sufficient to justify a conclusion that the object of the
search is probably on the premises to be searched at the time the warrant is issued. 
Ramos v. State, 934 S.W.2d 358, 363 (Tex.Crim.App. 1996); Cassias v. State, 719
S.W.2d 585, 587 (Tex.Crim.App. 1986) (emphasis added). When the facts and
circumstances within the knowledge of the affiant, arising from a reasonably trustworthy
source, would warrant a person of reasonable caution to believe that the items of
contraband or evidence of a crime may presently be found in a specified place, there is
probable cause to issue a warrant to search that place. Id. A search warrant affidavit must
be read in a common sense and realistic manner, and reasonable inferences may be
drawn from the facts and circumstances contained within the four corners of the affidavit. 
Id. at 587-88.
          We must decide whether under the totality of the circumstances the information
contained in the affidavit is such as to provide a “substantial basis” to support the
magistrate’s finding that a cautious person would be warranted in the belief that drug
paraphernalia would presently be found on the premises described. Illinois v. Gates, 462
U.S.213, 225-39,103 S.Ct. 2317, 2325-33, 76 L.Ed.2d 527 (1983).
At the Time the Warrant Is Issued
           An affidavit that does not provide a substantial basis for a magistrate to conclude
that the object of the search is presently located at the place to be searched, does not
establish sufficient probable cause for the issuance of a search warrant. Id. The only
information provided by the affidavit at issue concerning the temporal connection between
the object of the search (drug paraphernalia) and the place to be searched (Appellant’s
residence) is the Affiant’s belief that the pictures were from a wedding reception that Affiant
believed occurred some twelve days prior to presentment of the affidavit to the magistrate. 
However, the affidavit offers no support whatsoever for Affiant’s conclusion that the
photographs were from Appellant’s wedding reception. Furthermore, assuming the
photographs were from the wedding reception, the affidavit contains no statement as to
when the wedding reception took place, nor does he postulate why he believes the
paraphernalia would still be located at the place where the photographs were taken. In
order to reach the conclusion the State supports, i.e. that the photographs were taken at
Appellant’s residence on or near the date Appellant was married (April 23rd), the magistrate
would have to place inference upon inference just to conclude the events depicted
occurred some twelve days prior. If you then inferred that the item depicted was
contraband, and you assumed that Appellant stored the contraband on the premises
depicted and that the contraband had not been removed, you might reach the conclusion
that the object of the search was located on the premises to be searched at the time the
warrant was issued. Such inference, upon inference, upon inference is not probable
cause.Possession of Contraband by Appellant
          In the affidavit in question, Affiant makes the statement that “one of the pictures
shows what Affiant believes to be marijuana in the hand of Bannister.” Notwithstanding
the fact that an examination of the photograph belies that position, there is nothing in the
affidavit to support any conclusion that the apparatus depicted was used or intended for
use in ingesting, inhaling, or otherwise introducing marijuana into the human body. See
Tex. Health & Safety Code Ann. § 481.002 (17)(L) (Vernon 2003). The Affiant’s conclusion
that the apparatus depicted is contraband is nothing more than mere suspicion. Without
a connection to the use of a controlled substance, the assumption that the object depicted
is a “smoking apparatus used or intended to be used to ingest marijuana” is non-existent.
At the Place to be Searched
          Based upon “his experience,” the Affiant posits that paraphernalia is “often stored
or transported in vehicles.” The affidavit says nothing about whether paraphernalia is also
stored in residences, carports, or outbuildings; however, he reaches the conclusion that
the smoking device depicted in the photographs “will still be present at the residence,
carport, outbuilding, or vehicle(s) belonging to [Appellant] or his wife.” This conclusion is
based on pure conjecture both as to issue of storage and as to the continued storage in
the same location over an extended period of time. As such, it fails to establish a
reasonable basis upon which to conclude that drug paraphernalia could be found at
Appellant’s residence.
          To conclude that the apparatus depicted was illegal drug paraphernalia and that the
paraphernalia was stored at Appellant’s residence at the time the warrant was issued, one
would need to base inference upon inference upon inference. Such information might
suffice to corroborate an informant’s first hand tip, thus combining to establish probable
cause; however, it does not by itself provide anything more than the Affiant’s mere
suspicion that contraband might be found there. A search warrant issued upon such feeble
premises provides no constitutional protection whatsoever. 
          Because the affidavit in question does not provide sufficient probable cause to
justify the issuance of the warrant in question, Appellant’s second issue is sustained. 
Disposition of Appellant’s second issue pretermits consideration of his first issue.


 
Accordingly, the trial court’s judgment is reversed and this cause is remanded for further
proceedings consistent with this opinion.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice





Quinn, C.J., concurring.



Campbell, J., dissenting.





Do not publish.